NOT DESIGNATED FOR PUBLICATION

No. 117,637

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL RAY ANDERSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Ellis District Court; BLAKE BITTEL, judge. Opinion filed December 21, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., LEBEN and BRUNS, JJ.


PER CURIAM: Michael Ray Anderson appeals his jury trial convictions of 10 counts of sexual exploitation of a child in violation of K.S.A. 2014 Supp. 21-5510(a)(2). On appeal, Anderson contends: (1) the evidence in the record is insufficient to support his convictions; (2) his convictions are multiplicitous; and (3) the district court violated his constitutional rights in sentencing him to lifetime offender registration. After reviewing the record on appeal, we find sufficient evidence to support Anderson's convictions, and we do not find his convictions are multiplicitous. In addition, we find that the district court did not violate Anderson's constitutional rights in sentencing him to lifetime offender registration. Thus, we affirm.

1

Anderson and his wife, Danielle, lived with their two children in Ellis County from May 2013 to March 2015. Danielle and Anderson worked opposite shifts and took turns caring for their children during their off hours. Unfortunately, the couple experienced marital problems and a divorce action was commenced. While the divorce action was pending, Danielle and the children lived with her parents. Around the time she moved, Danielle rented a shed to store items from the marital home.

On April 27, 2015, Danielle notified the Ellis County Attorney's office that she had found the name of a website in the search history on her personal laptop computer that appeared to be related to child pornography. According to Danielle, the search had been performed at a time when she was at work. Danielle also indicated that Anderson was the only other person who knew the password to log onto her laptop.

Detective Brad Ricke of the Ellis County Sheriff's Office—who serves on the department's High Technology Crime Unit—met Danielle at her storage shed on May 13, 2015. Danielle pointed Detective Ricke to a box containing pornography that she said belonged to Anderson. Although the detective saw no child pornography in the box, he was suspicious of two compact discs ("CDs")—one labeled CUG 29,3 and the other not labeled. Danielle allowed Detective Ricke to take the two CDs to examine. Danielle also wanted him to examine her personal computer. Even so, the detective decided not to do so at that point because he did not have a search warrant and was concerned about Anderson's expectation of privacy.

Detective Ricke found the unlabeled CD to be blank. However, on the CD labeled CUG 29,3, the detective found 41 photographic images and 8 videos that he considered to be child pornography. In Detective Ricke's opinion, the photographic images and videos depicted children under the age of 18 because of "their small stature, the lack of the

children going through puberty, there was no pubic hair, and just the fact that as a father myself, I know what children look like." Detective Ricke discovered the images and videos in folders on the CD entitled "LSM" and "Nice."

A few weeks later, Danielle provided an external hard drive, a computer tower, and another laptop to Detective Ricke. Danielle told the detective that Anderson had been in the exclusive possession of these items, and they had been stored in the shed that she rented. On May 18, 2015, Detective Ricke obtained a search warrant to examine Danielle's laptop, but he did not find any images of child pornography on Danielle's laptop.

Detective Ricke then interviewed Anderson on May 21 and June 8, 2015. During these interviews, Anderson explained that he tried to copy the hard drive of his tower computer to an external hard drive and then to a CD disk. Anderson also stated that several people owned the computer prior to him. Ultimately, Anderson "identified that both the hard drive and the tower computer were in fact his" but refused to give his consent to a search of the external hard drive, computer tower, or second laptop.

After obtaining another search warrant, Detective Ricke found child pornography on both the external hard drive and the computer tower but not on the second laptop. The external hard drive contained 13 videos in a subfolder entitled "XXX Do Not Enter XXX." In addition, the computer tower stored more than 200 photographic images and 34 video files that Detective Ricke also believed depicted "children under the age of 18 engaged in sexual activity."

On November 13, 2015, the State charged Anderson with 10 counts of sexual exploitation of a child in violation of K.S.A. 2014 Supp. 21-5510(a)(2) a severity level 5, person felony. After completion of discovery and other pretrial matters, the district court commenced a two-day jury trial on July 28, 2016. At trial, the State presented the

3

testimony of Danielle and Detective Brad Ricke. The State also admitted 15 exhibits into evidence, including 10 photographs, a key for the photographs, a CD containing images, two hard drives, and audio from Detective Ricke's interviews with Anderson. After the State rested, Anderson testified in his own defense.

After deliberation, the jury convicted Anderson on each of the 10 counts of sexual exploitation of a child. Before sentencing, Anderson moved for new trial, objected to the presentence investigation report, and filed a motion for a dispositional and durational departure. After denying both the motion for a new trial and the motion for a departure sentence, the district court sentenced Anderson to a controlling term of 94 months in prison. In addition, the district court ordered lifetime postrelease supervision and lifetime offender registration.

ANALYSIS

On appeal, Anderson raises four issues. Two of the four issues involve the sufficiency of the evidence presented at trial. He also contends that his convictions are multiplicitous because all of the files were found on a single computer hard drive. In addition, he contends that the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), in sentencing him to lifetime offender registration. We will first address the sufficiency of evidence issues before turning to the other issues presented.

*Sufficiency of the Evidence*

Sufficiency of the evidence is challenged on appeal only after the fact-finder—in this case, a jury—has determined the facts in the State's favor and convicted the defendant. On appeal, we review the record in a light most favorable to the State to determine whether a reasonable fact-finder could have found the defendant guilty beyond

4

a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). In making a sufficiency determination, we do not reweigh evidence, resolve evidentiary conflicts, or make determinations about witness credibility. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

Anderson first asserts that the State failed to present evidence that he possessed a photograph, film, video picture, digital image or computer-generated image. According to Anderson, "[t]he question in this case is whether a digital file on a computer is a picture or an image." He argues that a digital file is not an "image" nor a "picture" until it is "made or produced." In support of his argument, Anderson relies heavily on *State v. Donham*, 29 Kan. App. 2d 78, 24 P.3d 750 (2001).

We do not find *Donham* to be particularly helpful to our analysis for two reasons. First, the *Donham* panel applied a previous version of the sexual exploitation of a child statute that differs in substance from the current statute under which Anderson's charges were brought. Second, the issue raised in *Donham* did not involve sufficiency of the evidence. Rather, the issue raised was whether Donham's convictions were multiplicitous. 29 Kan. App. 2d at 81-82.

The former statute addressed in *Donham* was K.S.A. 2000 Supp. 21-3516(a)(2), which prohibited possession of:

> "any film, photograph, negative, slide, book, magazine, or other printed or visual medium or any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk in which a visual depiction of a child under 18 years of age is shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another." K.S.A. 2000 Supp. 21-3516(a)(2).

5

In 2005, the Kansas Legislature passed Senate Bill 147, which amended K.S.A. 2000 Supp. 21-3516(a)(2). As amended, the statute prohibited:

"possessing any visual depiction, including any photograph, film, video picture, digital or computer generated image or picture, whether made or produced by electronic, mechanical or other means, where such visual depiction of a child under 18 years of age is shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another." L. 2005, ch. 162, § 4.

Five years later, the 2010 Legislature recodified the crime of sexual exploitation of a child into K.S.A. 21-5510 and further amended the statutory language. L. 2010, ch. 136, § 74. Here, the jury convicted Anderson of violating the recodified and amended version of the statute. This version of the statute prohibits "possessing *any visual depiction* of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." (Emphasis added.) K.S.A. 2014 Supp. 21-5510(a)(2). Of note, the sexual exploitation of a child statute is no longer based on a particular medium.

A review of the record in the light most favorable to the State reveals sufficient evidence upon which a jury could have found beyond a reasonable doubt that Anderson possessed visual depictions of children under 18 years of age engaging in sexually explicit conduct. In particular, the State presented evidence that Anderson possessed 10 ".jpg" files containing child pornography. The terms ".jpg"—sometimes referred to as ".jpeg" or "JPEG"—is "an acronym for 'Joint Photographic Experts Group.' The acronym represents the standard which was designed for compressing full color or grayscale still images of real-world scenes. JPEG images allow storage and display of digitized photographic images and photo-realistic art work." *United States v. Terry*, 240 F. Supp. 2d 922, 930 n.5 (S.D. Iowa 2002); see also *United States v. Brown*, 327 F. Appx. 526,

528 n.2 (6th Cir. 2006) (finding that JPEG "is widely used on the Internet for the display of photographs.").

During the direct examination of Detective Ricke, he testified how he found the sexually explicit images of children on Anderson's computer devices. In addition, during his testimony, the State admitted into evidence an exhibit identifying "ten specific files, image files, names, creation times, access times that were taken from the computer tower's hard drive." The 10 visual depictions of children engaged in sexually explicit activity were also admitted into evidence and shown to the jury. We find this evidence to be sufficient to establish that Anderson possessed 10 visual depictions of children under 18 years of age engaging in sexually explicit conduct as prohibited by K.S.A 2014 Supp. 21-5510(a)(2).

Anderson also suggests that the State failed to present sufficient evidence that he possessed the child pornography with the intent to arouse or satisfy his sexual desires or to appeal to his prurient interest. Anderson argues that to establish intent under K.S.A 2014 Supp. 21-5510(a)(2), more than "mere possession of a visual depiction" of children engaging in sexually explicit activity is required. In response, the State argues that sufficient circumstantial evidence was presented at trial to establish that Anderson possessed the child pornography with the intent to arouse or satisfy his sexual desires or appeal to his prurient interest.

As indicated above, when reviewing the sufficiency of the evidence, we do not reweigh the evidence and must review the record in the light most favorable to the State. *Rosa*, 304 Kan. at 432-33. Moreover, as our Supreme Court has found, "even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." 304 Kan. at 433; see *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). It is unnecessary to exclude every other reasonable conclusion or inference that might be

7

reached from the evidence presented at trial. *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 755 (2008) (citing *Yount v. Deibert*, 282 Kan. 619, Syl. ¶ 1, 147 P.3d 1065 [2006]).

Here, in addition to the testimony of Detective Ricke, Danielle testified about the internet search history that had first raised her suspicions. In particular, she testified that she found the words "Daddy made me cum after I gave him a blow job" in the search history. Danielle said that only she and Anderson knew the password to the computer where the search history was found and that she was at work when the search was performed.

Without getting into graphic detail, the 10 visual depictions taken from Anderson's computer tower hard drive depict prepubescent nude children engaged in oral sex, sexual intercourse, and various other sexual activity. The ".jpg" names of the 10 files likewise described each file to contain illegal underage graphic sexual abuse or activity.

Viewing the evidence in the light most favorable to the State, we find that sufficient circumstantial evidence was presented at trial upon which a reasonable fact-finder could conclude that Anderson possessed the sexually explicit images of children with the intent required under K.S.A. 2014 Supp. 21-5510(a)(2). In particular, we find the visual depictions themselves combined with the evidence regarding the names of the ".jpg" files—as well as the other evidence presented at trial—was sufficient to lead a reasonable fact-finder to the conclusion that Anderson possessed the child pornography with the intent to arouse or satisfy his sexual desires or to appeal to his prurient interest. See *State v. Liebau*, 31 Kan. App. 2d 501, 505, 67 P.3d 156 (2003); *State v. Coburn*, 32 Kan. App. 2d, 657, 667, 87 P.3d 348 (2004); *State v. Nelson*, No. 106,279, 2012 WL 4373003, at *6 (Kan. App. 2012) (unpublished opinion). Thus, we conclude that there is sufficient evidence in the record to support each of Anderson's convictions.

*Multiplicity*

Anderson also contends that his convictions are multiplicitous. Although he did not raise this issue before the district court, we will consider it for the first time on appeal because it involves Anderson's fundamental right to a fair trial. *State v. Umphenour*, No. 116,577, 2018 WL 2271419, at *3 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* June 18, 2018; *State v. Housworth*, No. 115,836, 2017 WL 2834502, at *13 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 990 (2018). Because multiplicity involves a question of law, our review over this issue is unlimited. *State v. Hirsh*, 54 Kan. App. 2d 705, 718, 405 P.3d 41 (2017), *rev. granted* 307 Kan. 990 (2018).

To the extent that Anderson's argument requires us to interpret statutory language, our review is also unlimited. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The most fundamental rule while engaging in statutory interpretation is that the intent of the Legislature governs. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). We must first attempt to determine legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. 303 Kan. at 813.

Our Supreme Court has stated that "'multiplicity is the charging of a single offense in several counts of a complaint or information.'" *State v. King*, 297 Kan. 955, 970, 305 P.3d 641 (2013). Multiplicitous charges create the potential for multiple punishments for a single crime. Accordingly, they may violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. 297 Kan. at 970.

In *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), our Supreme Court articulated a test—known as the "unit of prosecution test"—for determining whether a defendant's convictions for multiple violations of the same statute are multiplicitous. Under the unit of prosecution test, we must determine (1) whether the convictions arise from the same conduct and (2) whether under the statutory definition there are several offenses or only one offense. *Schoonover*, 281 Kan. at 496. Ultimately, "the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution." *Schoonover*, 281 Kan. at 497.

In support of his multiplicity claim, Anderson argues that his

"ten convictions for sexual exploitation of a minor arose from the same conduct, the alleged possession of a hard drive that contained child pornography. The single act of possession occurred on or about March 30th, 2015 and each of the files the state charged Mr. Anderson with were found on the same hard drive. Thus, the acts occurred at the same time, in the same location, there was no intervening event between the acts, and no fresh impulse motivated any of the conduct."

In *State v. Hulsey*, No. 109,095, 2014 WL 4627486 (Kan. App. 2014) (unpublished opinion), a panel of this court considered whether the defendant's 89 convictions of sexual exploitation of a child under K.S.A. 2010 Supp. 21-3516(a)(2) were multiplicitous. 2014 WL 4627486, at *6. Similar to the present case, all of the convictions were based on Hulsey's possession of sexually explicit photos on a single computer. On appeal, this court concluded that "Hulsey's 89 convictions for sexual exploitation of a child are not multiplicitous as each individual picture supports a conviction pursuant to K.S.A. 2010 Supp. 21-3516(a)(2)." 2014 WL 4627486, at *21.

In reaching this conclusion, the *Hulsey* court found:

> "[T]he legislature removed language criminalizing computer equipment containing child pornography [in 2005], leaving only the criminalization of 'any visual depiction' of child pornography. With this revision, the clear statutory language criminalizes each sexually explicit visual image containing a child under 18 years old. How the images are collected or contained makes no difference under K.S.A. 2010 Supp. 21-3516(a)(2). . . . Thus, by statutory definition, Hulsey is guilty of possessing each image of a child less than 18 years old. It does not matter when he obtained or accessed the images." 2014 WL 4627486, at *12.

As recognized in *Hulsey*, the use of the word "any" in a Kansas criminal statute has generally been recognized as allowing multiple units of prosecution in cases where the defendant possessed multiple prohibited items. 2014 WL 4627486, at *11-12; *Housworth*, 2017 WL 2834502, at *14; *State v. Booton*, No. 113,612, 2016 WL 4161344, at *10 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1321 (2017); *State v. Odegbaro*, No. 108,493, 2014 WL 2589707, at *9 (Kan. App. 2014) (unpublished opinion); *State v. Odell*, No. 105,311, 2013 WL 310335, at *8 (Kan. App. 2013) (unpublished opinion). As such, we find it significant that the 2005 Legislature amended the statute to prohibit the possession of "any visual depiction" of child pornography. With this amendment, the plain language of the statute criminalizes each sexually explicit visual depiction of a child under 18 years old engaged in sexually explicit activity possessed with the intent to arouse or satisfy a defendant's sexual desires. This same language is used in the statute under which Anderson was convicted, K.S.A. 2014 Supp. 21-5510(a)(2).

We pause to note that our interpretation of the plain language of the statute is consistent with the intent suggested in the Summary of Legislation issued by the Legislative Research Department—in conjunction with the Legislative Coordinating Council—of which the President of the Kansas Senate and Speaker of the Kansas House

of Representatives are members. As this court recognized in *Umphenour*, "[t]he Summary of Legislation for 2005 Senate Bill 147 states: 'The bill . . . amends the crime of sexual exploitation of a child *to allow one count of sexual exploitation of a child to be filed for each individual image of child pornography an offender possesses* and makes other changes to update the language of the crime. (Emphasis added.)'" 2018 WL 2271419, at *8. Thus, it is clear—both from the plain language of K.S.A. 2014 Supp. 21-5510(a)(2) and from legislative history—that our Legislature intended to criminalize the possession of each visual depiction of a child engaged in sexually explicit conduct. As such, Anderson's claim of multiplicity fails.

*Sexual Offender Registration*

Anderson's final contention is that the district court violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution. In particular, he argues that the district court violated his rights as outlined in *Apprendi*, 530 U.S. at 490, when it sentenced him to lifetime offender registration instead of 25 years of offender registration. But Anderson candidly acknowledges that the Kansas Supreme Court has adversely decided a similar issue in *State v. Huey*, 306 Kan. 1005, 1009-1010, 399 P.3d 211 (2017). He states that he has raised this argument "to preserve the issue for federal review."

In *Huey*, our Supreme Court held the Legislature intended that the Kansas Offender Registration Act be civil and nonpunitive for all offenders. 306 Kan. at 1009. And previously, in *State v. Petersen-Beard*, 304 Kan. 192, 209, 377 P.3d 1127 (2016), our Supreme Court held that lifetime registration requirements imposed on sex offenders do not constitute punishment. We are duty bound to follow the precedent of our Supreme Court unless there is some indication it is departing from its prior position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Here, we find no indication

12

that our Supreme Court is departing from its position in *Huey* or *Petersen-Beard*. Accordingly, we reject Anderson's argument.

Affirmed.